AUG - 3 2010

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

SANDRA G. GRESHAM,

           Plaintiff,

v.

PETRO STOPPING CENTERS, LP, A
Delaware Limtied Partnership, dba Petro
Stopping Center #38 and TCA PSC GP LLC,
an Ohio Limited Liability Company

           Defendants.

3:09-cv-00034-RCJ-(VPC)

**ORDER**

## I.   INTRODUCTION

Plaintiff Sandra G. Gresham ("Plaintiff") sued Defendants Petro Stopping Centers, LP and TCA PSC GP LLC (collectively, "Defendants") for negligence. Presently before the Court is Defendants' Motion for Summary Judgment (#17). Plaintiff filed an opposition (#23) and Defendants replied (#27). A hearing was held on June 11, 2010. IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#17) is DENIED.

## II.   BACKGROUND

On September 6, 2006, Plaintiff went to Petro Stopping Center #38, located at 1950 East Greg Street in Sparks, Washoe County, Nevada, to get her truck washed. (*See* Gresham depo. at 147:16–148:12, 150:6–9, 121:13–19, attached as Ex. 5 to Thompson Decl. (#24[1]);

---

[1]The Thompson Decl. was included in the manual filing referred to in the Notice of Manual Filing (#24). Docket #21, which refers to the electronically filed Thompson Decl., does not include the majority of the exhibits referred to herein.

Crow depo. at 15:12–14, attached as Ex. 2 to Thompson Decl. (#24)).  After paying for the truck wash, Plaintiff fell while walking back toward her truck and was injured. (Gresham depo. at 155:15–156:18, 194:12–202:5, Ex. 8, 9, attached as Ex. 5 to Thompson Decl. (#24)).

Plaintiff was aware at the time of the accident that Petro Stopping Center #38's truck wash, consistent with other such truck washes, was wet and slippery. (Gresham depo. at 132:23–133:3, attached as Ex. C to Def.'s Mot. for Summ. J. (#17)).  Plaintiff was wearing Croc brand shoes with straps at the time of the accident. (Gresham depo. at 133:8–11, attached as Ex. 5 to Thompson Decl. (#24)).  However, the evidence is in dispute regarding what happened during the accident itself.  Defendant has presented evidence that Jesus Hernandez, an employee of Defendant Petro Stopping Centers, LP ("Petro"), saw Plaintiff trying to put one of her shoes back on when she fell. Hernandez further stated that he was next to Plaintiff when she slipped and that he attempted to keep her upright. (Hernandez depo. at 11:24–25, 15:23–17:24, attached as Ex. 6 to Thompson Decl. (#24)).  Plaintiff has provided evidence to the contrary, stating that in fact none of her clogs had come off and no Petro employees were near her when she fell.  (Gresham depo. at 156:1–2, 157:13–19, 159:12–18, attached as Ex. 5 to Thompson Decl. (#24)).

Petro operated the Petro Stopping Center #38 at the time of the accident.  Alamo was the former owner of the truck stop, and Travel Centers of America acquired the truck stop some time thereafter.  (Caddel depo. at 11:11–23, 23:5–6, attached as Ex. 1 to Thompson Decl. (#24)).  The truck wash functions by directing truck drivers to drive their vehicles into the truck wash, exit the vehicle, and walk across a wet concrete area to the office to pay. (Crow depo. at 40:14–41:7, 47:19–48:18, attached as Ex. 2 to Thompson Decl. (#24)).  When the wash is finished, drivers must then walk into the washing bay, get in the truck, and drive out. (*Id.* at 41:18–21).

The concrete area in front of the exit to the wash bay is wet on a regular basis and truck drivers exiting and returning to their vehicles walk across areas that are wet. (Caddel depo. at 43:6–8, attached as Ex. 1 to Thompson Decl. (#24); Crow depo. at 54:10–55:10, Ex. 3, attached as Ex. 2 to Thompson Decl. (#24)).  Signs warn of the dangers of the slippery

2

1  conditions, though Plaintiff denies seeing these signs before the accident took place.  (Crow

2  depo. at 65:9–67:19, Ex. 4, 5, attached as Ex. 2 to Thompson Decl. (#24); Gresham depo. at

3  156:25–157:8, attached as Ex. 5 to Thompson Decl. (#24)).

4          In approximately 1998 or 1999, the operators of the truck stop, which at the time was

5  Alamo, installed a non-slip surface over the concrete floor of the wash bay, the concrete in

6  front of the exit to the wash bay, and the concrete walkway to the office.  The non-slip surface

7  deteriorated over time, but did not deteriorate evenly because areas that are exposed to water

8  tend to deteriorate faster.  (Caddel depo. at 44:25–47:14, attached as Ex. 1 to Thompson

9  Decl. (#24)).  Petro did not install any kind of mats to prevent slipping because they believed

10  the mats would create a trip hazard.  (Id. at 41:5–15).

11  **III.    LEGAL STANDARD**

12          Summary judgment "should be rendered if the pleadings, the discovery and disclosure

13  materials on file, and any affidavits show that there is no genuine issue as to any material fact

14  and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The

15  moving party bears the burden of demonstrating the absence of a genuine issue of material

16  fact and the material lodged by the moving party must be viewed in the light most favorable

17  to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "'[A] material

18  issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the

19  differing versions of the truth.'"  *Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1483

20  (9th Cir. 1986) (quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir.

21  1982)).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving

22  party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not

23  significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*,

24  477 U.S. 242, 249–50 (1986) (citations omitted).  "A mere scintilla of evidence will not do, for

25  a jury is permitted to draw only those inferences of which the evidence is reasonably

26  susceptible; it may not resort to speculation."  *British Airways Bd. v. Boeing Co.*, 585 F.2d 946,

27  952 (9th Cir. 1978); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596

28  (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented

3

1  supporting a position is insufficient to allow a reasonable juror to conclude that the position
2  more likely than not is true, the court remains free . . . to grant summary judgment.").
3  Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact
4  implausible, then that party must come forward with more persuasive evidence than otherwise
5  would be necessary to show there is a genuine issue for trial." *Blue Ridge Ins. Co. v.*
6  *Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Prods., Inc. v.*
7  *Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that
8  are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*,
9  880 F.2d 1040, 1045 (9th Cir. 1989).

10      Questions of negligence are generally questions of fact. But, a question of negligence
11  becomes a question of law if the evidence is susceptible to only one conclusion. *Joynt v.*
12  *California Hotel & Casino*, 835 P.2d 799, 801 (Nev. 1992). "In negligence actions, courts are
13  generally reluctant to grant summary judgment." *Harrington v. Syufy Enterprises*, 931 P.2d
14  1378, 1380 (Nev. 1997).

15  **IV.  DISCUSSION**

16      Under common-law premise liability, a landlord has a duty to use reasonable care in
17  making his premises safe for business invitees. *Twardowski v. Westward Ho Motels, Inc.*, 476
18  P.2d 946, 947 (Nev. 1970). The landlord has a duty to inspect his premises to discover
19  dangerous conditions. *Id.* at 948. The landlord has a duty to warn invitees of hidden dangers
20  that the invitee is not aware of. *Id.* at 947. If the danger is obvious, its obviousness serves
21  as a warning itself and the landlord has no duty to warn. *Id.* "[B]ut an invitee's knowledge of
22  a dangerous condition may not bar recovery if his mission justifies encounter of it." *Id.* This
23  is the obvious danger rule.

24      Nevada has rejected the common-law distinctions of premise liability based on the
25  status of the plaintiff— invitee, licensee, or trespasser—and adopted a modern approach
26  using general negligence standards. Simply put, landlords have a duty to use due care so as
27  to not subject others to unreasonable risk. *Moody v. Manny's Auto Repair*, 871 P.2d 935,
28  940–43 (Nev. 1994).

1    However, the common-law obvious danger rule survives. *See Harrington v. Syufy*
2  *Enterprises*, 931 P.2d 1378, 1381 (Nev. 1997) (holding the obvious danger rule survives the
3  enactment of comparative negligence statutes).   The obvious danger rule obviates a
4  possessor of land's duty to warn against obvious dangers. *Id.* at 1380.  It does not bar liability
5  based on acts other than failure to warn.  *Id.* at 1381.  Thus, one in control of the premises
6  may be liable for negligently creating a condition that harms a plaintiff, even if the condition
7  was obvious. *See id.* at 1381.  For example, the Nevada Supreme Court has held that there
8  is a genuine issue of fact whether a landlord is liable when the plaintiff alleges that it created
9  conditions that forced her to walk over tire spikes, even if the tire spikes were obvious
10  dangers. *Id.*

11    An invitee's knowledge of a danger does not always bar recovery. *Rogers v. Tore, Ltd.*,
12  459 P.2d 214, 215 (Nev. 1969).  If the possessor of land "should anticipate the harm despite
13  such knowledge or obviousness," he may still be liable.  *Id.* (quoting Restatement (Second)
14  of Torts § 343A, at 218 (1965)).  For example, the Nevada Supreme Court held that there is
15  a genuine issue of fact whether a landlord is liable when the plaintiff was aware of the icy
16  conditions of the parking lot, but carefully walked across it to get to work. *Rogers*, 459 P.2d
17  at 215.  "[A] plaintiff may be justified in not watching every step." *Joynt v. California Hotel &*
18  *Casino*, 835 P.2d 799, 802 (Nev. 1992) (holding there was a genuine issue of fact as to
19  whether plaintiff was negligent in taking a step backward without looking to allow someone to
20  pass in a crowd).

21    A possessor of land may be required to warn or take reasonable steps to protect an
22  invitee if he has reason to expect that the invitee will suffer physical harm despite the
23  obviousness of the danger.   Restatement (Second) of Torts § 343A cmt. f (1965).

24      Such reason to expect harm to the visitor from known or obvious dangers may
        arise, for example, where the possessor has reason to expect that the invitee's
25      attention may be distracted, so that he will . . . fail to protect himself against it.
        Such reason may also arise where the possessor has reason to expect that the
26      invitee will proceed to encounter the known or obvious danger because to a
        reasonable man in his position the advantages of doing so would outweigh the
27      apparent risk.

28  Restatement (Second) of Torts § 343A cmt. f (1965).

1     In this case, the obvious danger rule does not bar Plaintiff from recovery for two

2 reasons. First, Plaintiff alleges liability based on Defendants' failure to adequately operate

3 its truck wash to avoid the slipping hazard by maintaining a non-slip surface, placing a mat

4 over the area, or directing customers to use a path that avoids the danger. Plaintiff does not

5 allege liability based on Defendants' failure to warn.

6     Second, the risk of harm from the wet surface is not based solely on a customer's lack

7 of knowledge of the conditions. The wet surface itself may be unreasonably dangerous

8 despite its obviousness. A reasonable person may be fully aware that the concrete is wet over

9 the direct path between the place of payment and his truck. Still, he may reasonably decide

10 to walk over the water to get to his truck. It is clear that Plaintiff does not allege liability based

11 on her lack of knowledge of the danger. She has admitted that she was aware of the water.

12 A reasonable trier of fact could find that Defendants should have anticipated that customers

13 would walk across the wet concrete and that Plaintiff's advantages of taking the direct route

14 to her truck outweighed the apparent risk of treading the wet concrete.

15     Defendants rely on the out-of-state decision of *Lugo v. Ameritech Corp.*, 629 N.W.2d

16 384 (Mich. 2001). (Def.'s Reply (#27) 4:6–6:12). The Supreme Court of Michigan has

17 interpreted the obvious danger rule as follows. The obvious danger rule cuts off liability if the

18 condition creates a risk of harm only because the invitee is not aware of it, but should be. But

19 if the condition created an unreasonable risk of harm despite its obviousness, the invitor must

20 exercise reasonable care to protect the invitee from the harm. *Lugo*, 629 N.W.2d at 386

21 (citing *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 185 (Mich. 1995)). The court held that

22 a pothole in a parking lot is open and obvious and does not create any unreasonable risk of

23 harm absent a plaintiff's lack of awareness of the pothole. *Lugo*, 629 N.W.2d at 388. The

24 court noted that a person walking in the parking lot would typically see the pothole and avoid

25 it. *Id.* Similarly, a plaintiff cannot recover when she falls on a step simply because she did

26 not see it. An ordinary person would notice a step and not trip. *Id.* at 389.

27     *Lugo* does not suggest that Plaintiff is barred from recovery under the obvious danger

28 rule. While an ordinary person would avoid a pothole *if he noticed it* and an ordinary person

6

1 would step over a step *if he noticed it*, a trier of fact could find that Defendants should have

2 reasonably anticipated that an ordinary person might walk across wet concrete in a direct path

3 from the place where he paid for a truck wash to his truck *even if he noticed the water*. As

4 Defendants note, people routinely encounter wet concrete on sidewalks, (Def.'s Reply (#27)

5 7:24–8:3), and often walk over it. Furthermore, an ordinary person may not be fully aware of

6 the soap and wax content of the water at the truck wash or how porous the specific mix of

7 concrete is. This is similar to Defendants' own example of an obvious condition that the

8 obvious danger rule does not bar liability for: a set of steps with varying riser heights. (Def.'s

9 Reply (#27) 5:4–12). An ordinary person might still attempt to climb them *even if he noticed*

10 *they were uneven*.

11       The *Lugo* majority implied that ordinary conditions, like potholes, cannot be excepted

12 from the obvious danger rule absent "special aspects" that pose an extreme likelihood of harm

13 or an unreasonable risk of severe harm. *Lugo*, 629 N.W.2d at 387–88. To the extent this

14 language may suggest requirements beyond those discussed above, this Court disagrees with

15 the majority, as did three justices on the panel. *See id.* at 391–401 (concurring opinions).[2]

16 **V.   CONCLUSION**

17       Accordingly, IT IS ORDERED that Defendants' Motion for Summary Judgment (#17)

18 is DENIED.

19       DATED: This _**3rd**_ day of August, 2010.

20

21

22

23 Robert C. Jones
   UNITED STATES DISTRICT JUDGE

24

25

26

27 _____

   [2]Defendant also relies on *Corey v. Davenport College of Business*, 649 N.W.2d 392 (Mich. Ct. App.
28 2002). However, since *Corey* adopts the same "special aspects" approach as *Lugo*, it is unpersuasive for the
   same reasons.