

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SANDRA G. GRESHAM, | ) |
| Plaintiff, | ) |
| vs. | ) 3:09-cv-00034-RCJ-VPC |
| PETRO STOPPING CENTERS, LP et al., | ) ORDER |
| Defendants. | ) |

This case arises out of a slip-and-fall incident at a truck wash. Pending before the Court are two motions in limine. For the reasons given herein, the Court grants the motions in part and denies them in part.

## I.   FACTS AND PROCEDURAL HISTORY

On September 6, 2006, Plaintiff Sandra G. Gresham slipped and fell on Defendant Petro Stopping Centers, LP's ("Petro") property at 1950 E. Greg St. in Sparks, Nevada and suffered a compound fracture of her left femur. (Compl. ¶¶ 5–7). On 28 August, 2008, Plaintiff sued Petro and its general partner, TCA PSC GP LLC, in state court for negligence on a respondeat superior theory. (*See id.* ¶¶ 3, 9). Defendants removed. The Court has denied Defendants' motion for summary judgment. (*See* Order, Aug. 3, 2010, ECF No. 52). Defendants have filed two motions in limine.

///

## II.   LEGAL STANDARDS

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed. 2009). Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

A motion in limine is a request for the court's guidance concerning an evidentiary question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc. v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to

change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

## III. ANALYSIS

### A. First Motion in Limine (ECF No. 54)

Defendants make eleven evidentiary requests. Several of the requests, however, identify no particular piece of evidence to exclude, but simply remind the Court of certain rules of evidence or ask the Court to prohibit certain kinds of argumentation generally.

#### 1. Nonspecific Requests

Defendants ask the Court to exclude evidence not timely disclosed, but they do not identify any particular piece of undisclosed evidence they think Plaintiff will attempt to adduce. They also ask the Court to exclude evidence of other accidents at the property without a foundation showing that the accidents were similar to the accident in this case. The Court does not have enough information to make such a ruling at this time. They also ask the Court to exclude argumentation inviting the jury to put themselves in Plaintiff's shoes, argumentation expressing an opinion as to the justness of the Plaintiff's cause, argumentation alluding to counsel's personal knowledge of facts not in evidence, and appeals to sympathy or bias. Such comments would indeed be improper, but these requests are not appropriate for in limine rulings because there is no particular piece of evidence identified and no improper argument that has yet been made. "Exclusion" of such arguments at this stage would merely be a recitation of the rules, not an application of them. Several of the requests, however, are specific enough that the Court can rule on them.

#### 2. Wealth of the Parties

Defendants ask the Court to exclude evidence or argumentation concerning the poverty

or wealth of the parties. The Court grants this request in part, because such evidence is irrelevant to fault or causation. *See* Fed. R. Evid. 401–402. However, evidence of Plaintiff's financial condition will not be excluded insofar as it is relevant to damages, i.e., lost wages, medical bills, etc. And, as Plaintiff notes in response, evidence that is admissible for other purposes need not be redacted to avoid any mention of the fact that Petro is a nationwide chain.

### 3. Insurance

Defendants ask the Court to exclude evidence of their liability insurance. Such evidence is excluded unless introduced to show ownership or control of the premises, and only if Defendants dispute those issues at trial. *See* Fed. R. Evid. 411.

### 4. Voir Dire Concerning Propensity to Return a Large Verdict

Defendants ask the Court to prohibit Plaintiff's counsel from questioning the venire about what size verdict they would be comfortable returning. Plaintiff agrees in response that it would be improper to attempt to obtain a pledge from a prospective juror to return a large verdict or to refer to verdicts returned in other cases, but Plaintiff also argues that the parties are entitled to question jurors as to their bias, including a potential juror's unconditional refusal to return a large verdict even if supported by the facts and the law. Plaintiff is correct. The Court denies this request. Plaintiff may ask questions to ascertain if any potential jurors would refuse to give a large verdict even if the facts and law supported it, just as Defendants may ask questions to ascertain if any potential jurors would refuse to return a verdict for the defense even if the facts and law supported it.

### 5. Settlement Negotiations

Defendants ask the Court to exclude evidence of communications made during settlement negotiations. Such evidence must be excluded in a civil case unless offered to show bias or prejudice or to rebut a claim of undue delay. *See* Fed. R. Evid. 408. However, as Plaintiff notes in response, otherwise admissible evidence does not become inadmissible simply because

it is also discussed during settlement negotiations, just as otherwise admissible evidence does not become inadmissible under the privilege rules simply because an attorney also has the information in his notes. Again, however, Defendants identify no particular statements to exclude.

6. **Slip-and-Fall Expert Testimony**

Defendants ask the Court to exclude the testimony of Plaintiff's expert witness Brian K. Jones as to the cause or mechanism of the alleged fall.[1] Defendants argue that Jones is unqualified to give his opinion as to the cause of a fall and that he has not shown that his findings are based on sound scientific methods under *Daubert*. The Court grants this request in part.

Jones is clearly qualified to testify as an expert concerning the mechanics and physical causes of a fall. He has a bachelor of science degree in mechanical engineering, a master of science degree in biomedical engineering, specializing in biomechanics and human factors, is a licensed professional engineer in Nevada, is certified by the International Safety Academy as proficient in wet and dry slip testing and the analysis of pedestrian slip-and-fall incidents, and has worked for approximately sixteen years in the field of accident reconstruction, including slip-and-fall incidents. A more qualified expert on the subject of the mechanics of slip-and-fall accidents could hardly be found. There are two potential problems with Jones' proffered testimony, however.

First, Jones appears prepared to testify not only about the mechanics of slip-and-fall incidents generally and the mechanical causes of the present incident based on the testimony of witnesses and his own tests, but also about the legal issue of fault. In fact, his Causation and Culpability Analysis ("CCA"), as the title implies, focuses largely on his perception of fault.

---

[1] Defendants ask the Court to exclude testimony of "civil engineering experts," and Jones is the expert who most closely fits this description, as his degree is in mechanical engineering.

Page 5 of 8

(*See* CCA, ECF No. 54-4, at 26). Jones is not an expert on the legal issue of fault, but on the scientific issues of Newtonian physics, friction, human biomechanics, and the like. He will be permitted to testify only as to his opinions on these scientific issues as they are relevant to causation. In other words, he may answer questions such as: "Was this fall caused by the presence of water, oils, and soaps on the concrete?" But he will not be permitted to answer questions such as: "Was this fall caused because Defendants failed to maintain reasonably safe premises?" Jones' report is largely focused on answering the latter question. His testimony will be restricted to the scientific issues about which he is an expert, i.e., the causation element of a negligence claim, but not the duty, breach, or damages elements, as he is not an expert in these areas.

Second, even insofar as Jones is an expert on the mechanics of slip-and-fall accidents, his report does not describe his methods. He cites only "Coefficient of friction tests results" and "Site observations and tests results." (*See id.* 2). The Court may question Jones as to what these tests entailed in order to ensure that his methods are scientifically sound under *Daubert*.

Finally, Defendants identify another of Plaintiff's experts, Jon P. Moldestad. (*See* Moldestad Resume, ECF No. 54-4, at 29). Moldestad's expertise is in safety. He has a bachelor of arts degree in psychophysics and psychometrics, which are fields of psychology. He has a master of science degree in safety science, however. His qualifications seem to concern safety policies, but nothing expressly scientific. He appears to have no scientific training. Of course, expert opinion need not be based on scientific expertise; it may also be based on "specialized knowledge." Fed. R. Evid. 702. Moldestad has a masters degree in safety science and some kind of post-graduate training in accident investigation and analysis. He is therefore probably qualified to testify as a safety expert about the likely cause(s) of Plaintiff's fall based on information he has surrounding the incident. Plaintiff responds that Moldestad's report indicates his method was a "fault-tree analysis," which is a widely used method developed by the United

States government for accident investigation. No party appears to have attached a copy of Moldestad's report, however. Subject to voir dire, the Court will admit him as an expert as to the cause of the fall and safety standards in the industry, but not as to the issue of negligence directly.

B.  Second Motion in Limine (ECF No. 59)

Defendants ask the Court to exclude reference to the immigration status of their witness Jesus Hernandez. Defendants argue that Hernandez's alleged illegal immigration status is not relevant. They also argue that Hernandez in fact has a permanent resident card (a "green card") despite his admission at his deposition that he had been living and working illegally in the United States. It is possible that he only recently obtained a green card and had been in the United States illegally prior to receiving it. In any case, the facts are in dispute.

Specific instances of conduct may be inquired into on cross-examination at the discretion of the Court if probative of truthfulness. *See* Fed. R. Evid. 608(b). The First, Second, and Eighth Circuits have found that unlawful entry or violation of immigration laws are relevant to truthfulness where there is some evidence that the violations involved dishonesty. *See United States v. Almeida-Perez*, 549 F.3d 1162, 1174 (8th Cir. 2008) (citing *United States v. Cardales*, 168 F.3d 548, 557 (1st Cir. 1999); *United States v. Cambindo Valencia*, 609 F.2d 603, 633–34 (2d Cir. 1979)). Plaintiff will be allowed on cross-examination to question Hernandez about false statements made to immigration officers or other authorities, the use of a false social security number, etc., so long as Plaintiff has a good-faith basis for asking the question, but Plaintiff will not be permitted under Rule 608(b) to impeach Hernandez with the bare fact of his alleged illegal status. If Hernandez denies a given allegation of dishonest behavior, Plaintiff may not attempt to prove it directly with extrinsic evidence, *see* Fed. R. Evid. 608(b), although Plaintiff may then introduce evidence of any prior inconsistent testimony to impeach Hernandez's credibility generally if he is given an opportunity to explain any discrepancy, *see*

Fed. R. Evid. 613(b), 801(d)(1).

Plaintiff also argues that Hernandez's alleged illegal status is directly relevant to bias, because if he does not testify as Petro wishes, Petro might fire him or even report him to the immigration authorities, and Hernandez would have no recourse. Defendant argues that under Rule 403, the Court should find that such impeachment would be substantially more prejudicial than probative due to the emotional nature of the illegal immigration issue. The Court does not intend to permit impeachment of Hernandez based on his bare immigration status.

The Court emphasizes that the rulings it makes in this order are provisional.

## CONCLUSION

IT IS HEREBY ORDERED that the Motions in Limine (ECF Nos. 54, 59) are GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated this 18th day of March, 2011.

_____
ROBERT C. JONES
United States District Judge