1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                        **DISTRICT OF NEVADA**
8
   SANDRA G. GRESHAM,                    )
9                                        )
                    Plaintiff,           )
10                                       )        3:09-cv-00034-RCJ-VPC
          vs.                            )
11                                       )
   PETRO STOPPING CENTERS, LP et al.,    )              **ORDER**
12                                       )
                    Defendants.          )
13 _____     )

14         This case arises out of a slip-and-fall accident at a truck wash.  Pending before the Court

15  are a motion for a new trial and a motion for attorney's fees and nontaxable costs.  For the

16  reasons given herein, the Court denies both motions.

17  **I.    FACTS AND PROCEDURAL HISTORY**

18         Plaintiff Sandra G. Gresham slipped and fell on Defendant Petro Stopping Centers, LP's

19  ("Petro") property in Sparks, Nevada and suffered a compound fracture of her left femur.

20  (Compl. ¶¶ 5–7).  Plaintiff sued Petro and its general partner, TCA PSC GP LLC, in state court

21  for negligence. (*See id.* ¶¶ 3, 9).  Defendants removed.  The Court denied Defendants' motion for

22  summary judgment.  The jury returned a verdict for Plaintiff, and the Court entered judgment

23  after argumentation over pre- and post-judgment interest.  Plaintiff has appealed the form of

24  judgment.  In the meantime, Defendants have moved for a new trial, and Plaintiff has moved for

25  attorney's fees and nontaxable costs.

1   **II.     LEGAL STANDARDS**

2       **A.     New Trial**

3       "[A]fter a jury trial, [a court may grant a new trial upon motion] for any reason for which

4   a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P.

5   59(a)(1)(A).

6       **B.     Attorney's Fees**

7       Rule 54 requires an award of costs to a prevailing party and permits attorneys' fees to a

8   prevailing party if provided for elsewhere (by statute, rule, or contract). *See* Fed. R. Civ. P. 54(d).

9   Local Rules 54-1 and 54-16 contain procedural and evidentiary requirements for fee awards.

10  **III.    ANALYSIS**

11      **A.     Motion for New Trial**

12      Defendants first argue they are entitled to a new trial based upon three errors in jury

13  instructions: (1) the Court improperly instructed the jury that the open and obvious danger

14  doctrine applies only to the duty to warn in Nevada, and not to the duty to maintain safe premises

15  generally; (2) the jury deliberated with an incomplete set of jury instructions, viz., it was missing

16  Instructions Nos. 21 and 22; and (3) the Court improperly commented on Instruction 22

17  concerning the open and obvious danger doctrine.  Second, Defendants argue that the Court

18  incorrectly applied the collateral source rule by refusing to permit Defendants to argue against the

19  reasonableness of Plaintiff's claimed medical expenses as opposed to who paid them.  Third,

20  Defendants argue that the Court's comments during the testimony of Jesus Hernandez unfairly

21  undermined his credibility.  Fourth, Defendants ask the Court to certify questions to the Nevada

22  Supreme Court concerning the open and obvious danger doctrine and the collateral source rule.

23      **1.     Jury Instructions**

24      The Court of Appeals "will not reverse a judgment because of an erroneous instruction if

25  the instructions fairly and adequately cover the issues." *Martin v. Cal. Dep't of Veterans Affairs*,

560 F.3d 1042, 1046 (9th Cir. 2009) (quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1065 (9th Cir. 2006) (internal quotation marks omitted)).  An error in jury instructions will not be reversed if it was "more probably than not harmless." *Id.* (quoting *Mockler v. Multnomah Cnty.*, 140 F.3d 808, 812 (9th Cir. 1998)).

        **a.**      **The Open and Obvious Danger Doctrine**

First, Defendants argue that the Court improperly instructed the jury that the open and obvious danger doctrine applies only to the duty to warn, and not to the duty to maintain safe premises generally.  The relevant jury instructions are Instructions 21 and 22, which the Court read aloud to the jury as:

> The owner of land has a duty to inspect the premises, to discover dangerous conditions not known to the plaintiff and to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use. . . . *The owner or occupier of property is not liable to one injured on the property where the injury resulted from a danger which was obvious or should have been observed in the exercise of reasonable care.  The above principle is applicable only to the landowner's duty to warn.*  So this is a specialized rule of law that only applies to an obligation to place signs, cones, warning, yellow tape.  It doesn't apply to the obligation of a landowner to remove an obstruction or to remove a risk.  This applies only to a landowner's negligence duty with respect to posting signs.  The owner or occupier of property is not liable to one injured on the property even if they didn't post a sign where the injury resulted from a danger which was obvious, okay?  So if a problem is very obvious, dynamite, exploding dynamite caps sitting right there on the floor, whether you put the proper signage, "explosive," and a whole bunch of small fine print about how to walk around it and so far does not bear.  The landowner has no liability for signage, as long as it's obvious to a person coming by, "Oh, those are explosive caps.  Don't walk too close."  So if a danger is obvious, then this simple legal principle says there is no duty imposed regarding signage, nothing else, doesn't say anything about the obligation for a landowner for example to remove the dynamite, okay, just signage.[1]

(Jury Trial (Day 6), May 25, 2011 (emphasis added)).  The State Bar of Nevada's Model Jury Instruction 8PML.3 reads "The owner or occupier of property is not liable to one injured on the property where the injury resulted from a danger which was obvious or should have been observed

---

[1]As Defendants note, the written Instructions 21 and 22 were inadvertently omitted form the instructions filed into the record after trial.  But it is clear from the audio recording of the trial that the Court read Instructions 21 and 22 aloud to the jury.

1    in the exercise of reasonable care." Nev. J.I. 8PML.3 (2011) (citing *Gunlock v. New Frontier Hotel*

2    *Corp.*, 370 P.2d 682 (Nev. 1962)).  In *Gunlock*, the plaintiff  had tripped over a three-to-four-inch

3    tall planter in a hotel lobby, where the edge of the planter was concealed by the foliage of the plants

4    in the planter. *See Gunlock*, 370 P.2d at 683.  The trial court dismissed after hearing the plaintiff's

5    evidence at a bench trial. *Id.*  The Nevada Supreme Court affirmed because the danger "was obvious

6    or should have been observed in the exercise of reasonable care." *See id.* at 684.  The Court in the

7    present case added the following sentence to the instruction, with which Defendants take issue: "The

8    above principle is applicable only to the landowner's duty to warn."  The Court added this sentence

9    in light of the Nevada Supreme Court's clarification in 1997 that "the obvious danger rule only

10   obviates a duty to warn.  It is inapplicable where liability is predicated upon acts other than a failure

11   to provide adequate warning of a dangerous condition." *Harrington v. Syufy Enters.*, 931 P.2d 1378,

12   1381 (Nev. 1997).  The *Harrington* Court noted that "in *Gunlock*, this court reached the obvious

13   danger issue only after concluding that there was no evidence that the planter was improperly

14   constructed or located." *Id.* at 1381 n.1 (citing *Gunlock*, 370 P.2d at 684).  The State Bar of Nevada's

15   failure to add this distinction to its model instructions (or explicit decision to omit it) does not alter

16   the law, which is determined solely by the Supreme Court of Nevada in its judicial capacity, not by

17   suggestions in what amounts to a practice guide published by the State Bar, an administrative arm

18   of that Court.

19       Plaintiff here alleged more than a failure to warn.  She also alleged a failure to avoid or

20   remedy the dangerous condition itself. (*See* Compl. ¶ 11, Aug. 28, 2008, ECF No. 1, at 7).  The

21   Court never ruled as a matter of law that the presence of the slippery surface in this case did not

22   constitute negligence, and the jury gave their verdict to Plaintiff on that issue.  Nor did the Court

23   instruct the jury that Plaintiff had no duty of care in walking such that the jury would think, as

24   Defendants argue, that the obviousness of a hazard has no relevance to comparative fault.  The

25   Court's instructions properly explained to the jury that a finding of automatic and total non-liability

1   based upon the obviousness of the danger applied only to the duty to warn, but that comparative

2   negligence otherwise applied.

### b.    Incomplete Instructions

4          Second, Defendants argue that the jury deliberated with an incomplete set of jury instructions,

5   viz., it was missing Instructions 21 and 22.  As noted, *supra*, the Court read these instructions to the

6   jury, and it is not clear that they were missing those instructions in the jury room.  It is only clear that

7   those two instructions were not included in the copy ultimately scanned into the electronic record.

8   In any case, the omission of these instructions can only have aided Defendants.  Instruction 21

9   concerned landowners' affirmative duties, and Instruction 22 limits the exceptions to those duties.

### c.    Comments on Instruction No. 22

11         Third, Defendants argue that the Court improperly commented on Instruction 22 concerning

12  the open-and-obvious-danger doctrine.  But the Court's comments, recounted *supra*, were proper in

13  light of *Harrington*.

### 2.    The Collateral Source Rule

15         Defendants argue that the Court improperly excluded evidence that Plaintiff's medical

16  services could have been obtained for less than she paid.  Defendants argue that the Court misapplied

17  the collateral source rule to exclude not only evidence of who actually paid the bills, but also

18  evidence that the bills were not reasonable in light of Plaintiff's damages.  Defendants argue there

19  was no danger of violating Nevada's collateral source rule, "because it was not necessary to inform

20  the jury *who* paid those expenses" in order to inform it that the expenses were not themselves

21  reasonable.  However, the Nevada Supreme Court does not permit the admission of evidence of

22  collateral sources of payment for any purpose whatsoever. *Proctor v. Castelletti*, 911 P.2d 853, 854

23  (Nev. 1996) ("We now adopt a *per se* rule barring the admission of a collateral source of payment

24  for an injury into evidence for *any* purpose." (emphases added)).  "Any" purpose presumably

25  includes the purpose of showing the reasonableness of expenses, as well as the source of the

1   payments.  The Court refused to permit evidence of collateral payments.

2          The collateral source rule makes the tortfeasor liable for the full extent of the damages

3   caused, no matter how much the victim actually pays.  That a medical provider ultimately accepts

4   less than a billed amount, whether from an insurance company or from the victim directly, is not

5   relevant to whether the tortfeasor is liable for the full value of the harm he has caused.  The collateral

6   source rule is an equitable rule specifically designed to ensure that the victim, and not the tortfeasor,

7   benefits from any "windfall" resulting from a difference between the value of the harm caused and

8   the amount actually paid to remedy it.  If a victim can remedy her harm at a "bargain" rate, the

9   "windfall" represented by the difference belongs to the victim, not to the tortfeasor.  There is no

10  principled reason to distinguish a "bargain" obtained by virtue of the fact that an insurer pays a bill

11  rather than a victim from a "bargain" obtained by virtue of the fact that a medical provider accepts

12  partial payment (from the victim or the insurer) in satisfaction of the entire bill ("write-downs").  In

13  both cases, the victim receives compensation from the tortfeasor beyond her actual expenses.

14  Defendants' grievance is with the reasoning behind the collateral source rule.  For the purposes of

15  damages against a tortfeasor, medical expenses are measured by the extent of the harm caused, not

16  by the medical expenses incurred and/or paid.  Defendants' citations to cases form other states

17  having different collateral source rules are not helpful.  And *Tri-County Equip. & Leasing, LLC v.*

18  *Klinke* is not helpful, because that case concerned the "limited exception" to the collateral source

19  rule for payments from workers compensation under both Nevada and California law.  *See* 128 Nev.

20  Adv. Op. 33 (June 28, 2012) (citing Nev. Rev. Stat. § 616C.215(10); Cal. Lab. Code § 3855 (West

21  2011)).  The *Klinke* Court ruled that because the admission of the collateral workers compensation

22  payments "incorporate[d]" the write-down by the medical provider in that case, it did not need to

23  consider a general exception to the collateral source rule for write-downs.  Therefore, the language

24  of *Proctor* remains intact after *Klinke*: not admissible "for any purpose." *Proctor*, 911 P.2d at 854.

25  Defendants argue that *Klinke* means the question is undecided.  But in the absence of a decision

adopting an exception for write-downs, *Proctor* is clear that there are no exceptions.

### 3.     Comments During Hernandez's Testimony

Defendants argue that the Court's comments to Jesus Hernandez tainted the jury's opinion of his credibility.  A Court's questioning of a witness does not mandate a new trial except in very extreme circumstances. *See, e.g.*, *McMillan v. Castro*, 405 F.3d 405, 412 (6th Cir. 2005) (holding that a new trial was not warranted even where the trial court's extensive questioning of one particular witness "bordered on condescending" and was "troubling" but where the trial court's treatment of the party's witnesses generally did not rise to the level of judicial hostility or bias).

Defendants take issue with the Court's questions concerning whether Hernandez had been coached in his testimony or whether he had been offered a job by Defendants.  But the questioning by the Court recounted by Defendants was innocuous.  The Court asked Hernandez whether anyone had told him how to testify, the last time he had worked for Defendants, whether he was fired, whether he had been offered his job back, and whether he had had any contact with Defendants since leaving.  Defendants also note that the Court assured Hernandez before the jury that nothing bad would happen to him because of his testimony, signaling that he might have some trouble with the authorities or that Hernandez is an illegal immigrant and that Defendants employ illegal immigrants, prejudicing the jury against Defendants.  The Court concludes that its questioning of Hernandez did not rise to the level of hostility or bias.

### 4.     Certification

Finally, Defendants ask the Court to certify to the Nevada Supreme Court the following questions: (1) whether the open and obvious danger doctrine prevents recovery in cases where the "gravamen" of the plaintiff's action is a failure to warn; and (2) whether the collateral source rule generally prevents the admission of write-down evidence.  The Court denies the request.

## B.     Motion for Attorney's Fees and Nontaxable Costs

Plaintiff argues that she is entitled to attorney's fees and nontaxable costs (expert witness

1  fees) under state law because Defendant rejected an offer of judgment that was lower than the verdict

2  she won.   The relevant state statute permits reasonable expert witness fees, *see* Nev. Rev. Stat.

3  17.115(4)(d)(1), and reasonable attorney's fees, *see id.* § 17.115(4)(d)(3).  The state rules also permit

4  such an award. *See* Nev. R. Civ. P. 68(f)(2).  Although section 17.115 and Nevada Rule 68 are *Erie*-

5  substantive, they can in some cases conflict with Federal Rule 68, which governs the penalties for

6  rejecting offers of judgment in federal court. *See Walsh v. Kelly*, 203 F.R.D. 597, 598–600 (D. Nev.

7  2001) (Reed, J.) (citing *Hanna v. Plumer*, 380 U.S. 460, 471–72 (1965)).  Whereas the state rule

8  permits both attorney's fees and otherwise nontaxable costs against a party who obtains a judgment

9  less favorable than an offer it rejected, the federal rule permits only costs. *See id.* at 599; Fed. R. Civ.

10  P. 68(d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted

11  offer, the offeree must pay the costs incurred after the offer was made.").  Federal Rule 68 is not

12  applicable here, however, because Defendants (the putative "offeree[s]" under Federal Rule 68)

13  obtained no judgment.  Federal Rule 68 conditions a plaintiff's award of costs—by denying him

14  costs where he would usually be entitled to them under Rule 54(d)—in cases where the plaintiff

15  obtains a judgment but in a lesser amount than an offer of judgment the defendant has made. *Delta*

16  *Air Lines v. August*, 450 U.S. 346, 352 (1981).

17       The court has discretion whether to award fees and costs under section 17.115 and Nevada

18  Rule 68, according to the following factors:

19       (1) whether the plaintiff's claim was brought in good faith; (2) whether the
20       defendants' offer of judgment was reasonable and in good faith in both its timing and
         amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial
         was grossly unreasonable or in bad faith; and (4) whether the fees sought by the
21       offeror are reasonable and justified in amount.

22  *Chavez v. Sievers*, 43 P.3d 1022, 1027 (Nev. 2007) (quoting *Beattie v. Thomas*, 668 P.2d 268, 274

23  (Nev. 1983)).[2]

24  _____

25       [2]Here, it is Plaintiff who seeks fees and costs under the statute, whereas in *Chavez*, it was
    the defendant.  Therefore, the Court considers whether the defenses were made in good faith and
    whether Defendant's rejection of the offer was in good faith. *See Yamaha Motor Co. v. Arnoult*,

1    Here, Plaintiff made a pre-discovery offer of judgment to Defendants in the amount of

2    $499,999.99 on July 8, 2009.  Defendant rejected the offer, and Plaintiff ultimately recovered a

3    greater judgment.  The Court will not award fees and costs in this case.

4    First, Defendant's defense was brought in good faith.  Defendant denied negligence, and the

5    jury found that it was 90% negligent.  A reasonable jury could have found that Defendants were not

6    negligent at all based upon the evidence adduced at trial.

7    Second, Plaintiff's offer was made in good faith as to the amount, but not as to the timing.

8    Plaintiff cannot reasonably have expected Defendants to pay half a million dollars before discovery

9    in this case.

10   Third, Defendants' rejection of the offer of judgment was not grossly unreasonable in light

11   of when the offer was made and in fact was not unreasonable at all.  The offer was for a large amount

12   (half a million dollars)[3] and was made before Defendants had even had discovery and under

13   circumstances where it reasonably appeared to Defendants that Plaintiff was the negligent party.  A

14   Defendant cannot fairly be penalized for rejecting such an offer at that early stage of litigation.  The

15   purpose of this fee-shifting statute is to reward parties for making reasonable offers and to punish

16   parties for unreasonably rejecting offers. *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 888

17   (Nev. 1999). The rejection of a half-million dollar settlement offer before discovery in a slip-and-fall

18   case such as this one cannot be said to be unreasonable.  Discovery is required for a defendant to

19   assess not only the potential for liability, but also the proper scope of damages, not only based upon

20   a plaintiff's bare allegations, but based upon some evidence, because it is the evidence, and not the

21   allegations, that a jury will assess at trial.  This is not to say that a defendant's rejection of a

22   settlement offer before discovery can never be grossly unreasonable under the statute.  If a settlement

23   offer is for a relatively small amount in a case where liability of the defendant should appear clear,

24   _____

25   955 P.2d 661, 673 (Nev. 1998).

[3]Plaintiff characterizes half a million dollars as "rock-bottom."

1   a defendant's rejection of the offer may be grossly unreasonable.

2       Fourth, the Court assumes for the sake of argument that the fees and costs requested are

3   reasonable.  On balance, the Court finds that the second and third factors are most important, and

4   that fees and costs should not be permitted because of the unreasonableness of the amount and

5   timing of the offer and the reasonableness of the rejection of the offer.

6                                          **CONCLUSION**

7       IT IS HEREBY ORDERED that the Motion for New Trial (ECF No. 180) and the Motion

8   for Nontaxable Costs and Attorney's Fees (ECF No. 177) are DENIED.

9       IT IS SO ORDERED.

10  Dated this 18th day of October, 2012.

11

12                                  _____
                                        ROBERT C. JONES
13                                   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25